UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DAYL L. R.,                                          Case No. 3:21-cv-00886-AR

               Plaintiff,                        **OPINION AND ORDER**

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Dayl L. (his last name omitted for privacy) argues that the Administrative Law

Judge (ALJ) erred in finding unpersuasive orthopedic surgeon Kevin Murphy's opinion that he is

capable of performing full-time sedentary exertional work but with regular breaks to walk and

stretch his legs and the ability to elevate his legs when needed. Further, plaintiff argues, a finding

that Dr. Murphy's opinion is persuasive breaks a tie between that opinion and the state agency

Page 1  – OPINION AND ORDER

physicians' opinions that he can perform light exertional work with additional postural limitations. Plaintiff contends that, because of that error, the ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence. (Pl.'s Br. at 7-8, ECF No. 21.) As explained below, the court disagrees with plaintiff's argument and therefore affirms the Commissioner's decision.

## ALJ'S DECISION

In denying plaintiff's application for disability insurance benefits (DIB), the ALJ followed the five-step sequential process.[1]  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 15, 2018, his alleged onset date. (Tr. 15.) At step two, the ALJ found that plaintiff has several severe impairments: anterior cruciate ligament (ACL) and lateral collateral ligament (LCL) tear of the right knee; neurolysis of the peroneal nerve, degenerative disc disease, obesity, neurocognitive disorder, anxiety, and attention deficit hyperactivity disorder. (Tr. 16.) At step three, the ALJ determined that plaintiff does not have an impairment, or combination of impairments, that meet or medically equal a listed impairment. (Tr. 16.)

After reviewing the evidence in the record, the ALJ then determined that plaintiff has the residual functional capacity (RFC) to perform light work, except that he is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; can sit for up to six hours in an eight-

---

[1]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

hour day; can stand or walk for six hours in an eight-hour day; can occasionally climb ramps, stairs, ladders, and scaffolds; can frequently balance, and stoop; can occasionally kneel, crouch, and crawl; can frequently handle simple, routine, repetitive tasks and make simple work-related decisions. (Tr. 18-19.) The ALJ found that plaintiff has no past relevant work at step four. (Tr. 24.) Given plaintiff's age, education, work experience, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as routing clerk, storage facility rental clerk, and gate guard. (Tr. 25-26.)

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision if the ALJ applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted). When the opinion by a medical provider is challenged, the court must consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The ALJ's analysis primarily considers the "supportability" and "consistency" of the opinions. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support her opinion. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is

with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

## DISCUSSION

### A.    *"Breaking the Tie"*

At issue here is plaintiff's challenge to the ALJ's finding that the opinion by plaintiff's treating physician—Dr. Murphy—was not persuasive. For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.").

In this case, plaintiff acknowledges the new regulations, but argues that if the ALJ finds that medical opinions are at "odds with each other," the ALJ must consider factors such as "relationship with the claimant" and "specialization" to decide which opinion is most persuasive. *See* 20 C.F.R. § 404.1520c(b)(3) ("When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision."). In plaintiff's view, the ALJ's finding that Dr. Murphy's opinion is not persuasive is unreasonable, and when Dr. Murphy's opinion is properly considered, his treatment relationship with plaintiff, length of treatment, and medical specialty breaks the tie with the agency physicians' opinions that the ALJ found persuasive. However, the court need not consider plaintiff's break-the-tie argument because, as explained below, the ALJ's finding regarding Dr. Murphy's opinion is supported by substantial evidence.

**B.    *Dr. Murphy's Medical Opinion***

The ALJ noted Dr. Murphy's opinion in which he stated that plaintiff can perform full-time sedentary exertional work but requires breaks every 60-90 minutes to walk and stretch his legs and needs to be able to elevate his legs when needed throughout the day.[2] The ALJ, however, found that opinion unpersuasive. That is because, the ALJ found, Dr. Murphy's

---

[2]    Plaintiff states that the limitations of frequent breaks and elevation of the legs means that he cannot perform full-time sustained work activity. (Pl.'s Br. at 7 (citing testimony of vocational expert (Tr. 50 and SSR 96-8p).) Therefore, according to plaintiff, Dr. Murphy's opinion satisfied his burden of proving that he is disabled. (*Id.*)

opinion was unsupported by his own objective findings, including that plaintiff had significant improvement in his right knee following surgery and physical therapy while also stating that he does not have pain in his right knee. Further, the ALJ explained that, despite plaintiff's muscle weakness, atrophy, and numbness in his right lower extremity and pain in his back, he had a normal gait and station, normal findings throughout his musculoskeletal system, and negative straight leg raise testing. The ALJ also found that plaintiff's numerous occasions of exercising by walking, riding a stationary bike, and lifting weights, as well as his reports that he felt less pain when he was active, support the finding that plaintiff can perform light exertional work with limitations. (Tr. 23-24 citing Tr. 345-47, 407-08, 411-12, 491, 494, 504-05, 675-80, 682-84, 689-90, 699-701, 725-27, 884-85, 890-92, 900-02.)

Plaintiff asserts that the ALJ's finding regarding Dr. Murphy's opinion was unreasonable, arguing that Dr. Murphy's opinion establishes that he is limited to sedentary work that requires periodic breaks and elevation of his leg rather than the ALJ's RFC finding that he is capable of light exertional work with limitations. (Pl.'s Br. at 6-7, citing SSR 96-8p.) Plaintiff asserts that, at bottom, the evidence the ALJ used for his finding was at best highly selective and at worst a blatant misstatement of the record. (Pl.'s Br. at 14.) In particular, plaintiff takes aim at the ALJ's finding that he had a normal gait and station, normal musculoskeletal findings, and negative straight leg raise (SLR) testing. (*Id*.) Plaintiff acknowledges that a few of the records cited by the ALJ describe benign findings, but he argues that if viewed in context, any periods of respite from pain or symptoms were transitory. (Pl.'s Br. at 16). Indeed, plaintiff contends, the citations to the record used to support the ALJ's findings support Dr. Murphy's conclusion that he is limited to sedentary work with periodic breaks and leg elevation rather than being capable of light work, as

found by the ALJ.[3] (*Id*.) The Commissioner responds by pointing to instances in the record on

which the ALJ relied that support the ALJ's finding and are inconsistent with Dr. Murphy's

opinion. (Resp.'s Br. at 7.) What plaintiff is doing, the Commissioner asserts, is urging the court

to reweigh the medical evidence. (*Id*.) And the Commissioner argues that the weighing of

evidence is the ALJ's function rather than belonging to this court. (Resp.'s Br. at 8). The

Commissioner is correct.

      The court acknowledges that plaintiff accurately states that some of the medical evidence

cited by the ALJ reveal difficulties with the functioning of his right leg and back pain. The ALJ

cited to records that included pain, tenderness, and numbness in the right knee and leg, decreased

muscular strength, and a non-responsive peroneal nerve. (Tr. 20, citing 494-96.) The ALJ

acknowledged that plaintiff's lumbar spine has a limited range of motion due to multilevel

degenerative disc disease and tenderness in the lower lumbar spine and both sacroiliac joins. (Tr.

21 citing 676-680, 683-84.) Plaintiff's distal atrophy, back pain, and reduced sensation in his

right lower extremity were also addressed by the ALJ. (Tr. 21.) Additionally, the ALJ recognized

that plaintiff repeatedly complained of foot drop and at times was wearing an ankle-foot orthosis

---

[3]    Plaintiff also contends that the string citation in support of the ALJ finding unpersuasive Dr. Murphy's opinion prevents the court from meaningfully reviewing the ALJ's reasoning. The ALJ, before he explained why he found unpersuasive Dr. Murphy's opinion regarding plaintiff's limitations, described the medical treatment provided by Dr. Murphy accompanied by specific citations to his treatment notes in the record. (Tr. 20-21.) Although the string citation is, perhaps, less than ideal, those descriptions in conjunction with the ALJ's summary of his reasons for discounting Dr. Murphy's opinions were sufficient to allow the court to meaningfully review the ALJ's basis for discounting the doctor's opinion. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (stating ALJ's are not required "to perform a line-by-line exegesis" or "draft dissertations when denying benefits"); *Elizabeth T. v. Comm'r Soc. Sec. Admin.*, Case No. 6:20-cv-00060-YY, 2022 WL 179205, at *6 (D. Or. Jan. 20, 2022) (finding ALJ did not err in partially rejecting physician's opinion because ALJ's reasoning could be discerned).

(AFO) brace. (Tr. 19-21, citing 699.)

The ALJ's decision acknowledged problems with plaintiff's right leg and back but nevertheless reasonably found that plaintiff's impairments are not incapacitating to the extent alleged. (Tr. 20.) Specifically, the ALJ pointed to instances in the record that are inconsistent with plaintiff's alleged need to be limited to sedentary work that requires periodic breaks and elevation of his leg. (Tr. 20.) Those instances include (among others) treatment notes from Dr. Murphy in which plaintiff repeatedly reported experiencing no pain his right knee, with improved stability, full range of motion, and improved quadriceps control and strength, (Tr. 20-21, 23-24, citing 504-05, 688-91); another treatment note by Dr. Murphy reflecting that plaintiff reported his knee is "doing well," and that he denied any significant pain, swelling, mechanical symptoms, or instability, and that he complained of low back pain for which Dr. Murphy recommended physical therapy, (Tr. 699); and that, in November 2018, Dr. Murphy indicated that plaintiff had improved quadriceps control and strength, with nearly full range of motion and good stability, and recommended that plaintiff follow up in four to six months due to his continued improvement (Tr. 20, citing 504-05).

It is true—as plaintiff points out—that there are conflicting indications in the record and Dr. Murphy's treatment notes, but it is the ALJ that is ultimately "'responsible for . . . resolving conflict in medical testimony,'" not the reviewing court. *E.g.*, *Ford*, 950 F.3d at 1149. Even when evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual

determinations." *Biestek*, 139 S.Ct. at 1154. The issue on review in this case is whether substantial evidence supports the Commissioner's finding that plaintiff is not disabled. Here, the Commissioner's finding is supported by substantial evidence, and a reviewing court must uphold an ALJ's finding sufficient evidence supports the agencies factual determinations. *Biestek*, 139 S.Ct. at 1154.

Plaintiff's other arguments about the ALJ's finding that Dr. Murphy's opinion is unpersuasive are also unavailing. One such argument is that the ALJ's findings are selective and unsupported by substantial evidence because plaintiff's examinations revealed positive straight leg testing and an abnormal gait. Although plaintiff is correct that on a few occasions from July 2019 through January 2020, he had positive straight leg raise (SLR) testing on the right due to his back pain, (Tr. 690 (positive SLR on 3/5/2020), Tr. 693 (moderately positive SLR on 7/30/2019), Tr. 696 (positive SLR on 7/11/2019), Tr. 736 (positive SLR on right on 1/17/2020), and Tr. 744 (positive SLR on right on 10/18/19)), the record also reveals that plaintiff mostly characterized his radicular back pain as mild, that he attributed it to increased walking, and in February 2020, plaintiff reported that his radicular back pain had resolved. (Tr. 21 (stating plaintiff complained of low back pain due to increased walking), 676, 719, 727, 725 (stating that "no evidence for significant RIGHT L3/4/5/S1 radiculopathy" and that testing was "all normal on needle EMG sampling").) Contrary to plaintiff's contention, the ALJ's finding that his gait consistently was normal is supported by the record.[4] The court concludes that the ALJ did not selectively review the evidence.

Another such argument is plaintiff pointing to the ALJ's finding that plaintiff "exercised

---

[4]     Plaintiff cites one instance where his gait was affected by his foot drop. (Tr. 907.)

by walking, riding his stationary bike, and lifting weights," which plaintiff contends should not be held against him because he was following the advice of Dr. Murphy and his physical therapist. (Pl.'s Br. at 16.) But the record does not merely reflect that plaintiff was exercising as instructed but rather indicates that exercise showed improvement in plaintiff's symptoms and that the degree to which plaintiff was able to exercise was inconsistent with Dr. Murphy's opinion. For example, the ALJ noted that plaintiff experienced consistent and significant improvement following his surgery and physical therapy, (Tr. 20-21, 23-24); in January 2020, plaintiff reported to Dr. Long that he was riding his spin bike every few days for 20 to 30 minutes, and that his strength and endurance were continuing to improve, (Tr. 21, citing 884-86); that plaintiff expressed to Dr. Long that the pain in his right leg is reduced with physical activity (Tr. 24, citing 900); and a May 2019 follow-up treatment note in which plaintiff reported to Dr. Murphy that he was "doing quite well functionally with his brace" and was walking up to *20,000 steps a day* (Tr. 20, citing 699) In sum, the improvement and extent of plaintiff's physical ability support the ALJ's finding that Dr. Murphy's opinion was unpersuasive.

As said above, it is the task of the ALJ and not this reviewing court to resolve conflicting medical evidence. Plaintiff's arguments essentially ask this court to resolve conflicts in his favor, but, because the ALJ's findings are supported by substantial evidence and are a reasonable interpretation of that evidence, they must be upheld. *Ford*, 950 F.3d at 1154.

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

Page 10  – OPINION AND ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's final decision is AFFIRMED.

 DATED May 17, 2023.

_____
JEFF ARMISTEAD
United States Magistrate Judge